IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAGE INJURY LAW, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:25-cv-03797-ELR |
| v. | ) | |
| | ) | |
| YAN GOLDSHTEYN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF PAGE INJURY LAW LLC'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

Plaintiff Page Injury Law, LLC ("Page Injury") responds in opposition to the Motion to Set Aside Clerk's Entry of Default (the "Motion"), ECF 8, filed by Defendant Yan Goldshteyn ("Defendant" or "Goldshteyn").

## I.    INTRODUCTION

Goldshteyn has not shown good cause to set aside the Clerk's entry of default. Goldshteyn claims that the default was "not the result of willful neglect or dilatory conduct, but rather a procedural irregularity stemming from substitute service while Defendant was out of town – a confluence of procedural circumstances that merit relief under . . . Rule 55(c)." Dkt. 10 at 1[1] But, Goldshteyn's claims are not supported

---

[1] Page numbers correspond to the page numbers in the Court's e-filing header.

by the facts. Page Injury served Goldshteyn pursuant to Federal Rule of Civil Procedure 4(e)(2)(B) by leaving a copy at Goldshteyn's "dwelling or usual place of abode with someone of suitable age and discretion who resides there." Dkt. 5. Goldshteyn acknowledges that his wife received the summons and Complaint on August 13, 2025. Dkt. 10 at 11, Declaration ¶ 2. Despite that admission, Goldshteyn claims he did not receive "actual notice" of the lawsuit until "much later" when he returned home from his trip "out of town." *Id.* But incredibly, Goldshteyn fails to tell the Court (1) when he returned home or (2) when he learned of the lawsuit. *Id.* Goldshteyn's omission of these key facts is unsurprising and ultimately necessary to his fractured narrative.  Goldshteyn, as shown below, undoubtedly had notice of the lawsuit at least as early as August 20, 2025, just seven days after service was perfected. Dkt. 9-2 at 2. Goldshteyn – a lawyer licensed in the state of California and admitted to the Central District of California – willfully chose not to answer within 21 days of service.

At least as troubling as Goldshteyn's omission of key facts is Goldshteyn's reliance on case law that does not appear to exist. As discussed below, counsel for Page Injury was unable to locate at least three (3) cases that Goldshteyn cites in his Motion. For example, Goldshteyn cites *United Sttes v. One 2000 Mercedes Benz,* No. 1:03-cv-3533-WSD, 2004 WL 540441 at *2 (N.D. Ga. Mar. 15, 2004) as the sole case supporting his claim that "[c]ourts routinely recognize that substitute

service resulting in delayed actual notice may constitute good cause under Rule 55(c)." Dkt. 10 at 3-4. The Westlaw citation is for a different case: *Usha (India), Ltd v. Honeywell International, Inc.* No. 03-cv-0494 (S.D.N.Y. March 17, 2004). Gentry Dec. at ¶ 7-9. Moreover, Page Injury's counsel could not find the case using the Northern District of Georgia Pacer search functions or through entering the case name in Westlaw. *Id.* at ¶¶ 11-20.

Goldshteyn's claims to having a meritorious defense fare no better. In fact, he refuses to declare that he will bring a meritorious defense, only claiming that he will "possibly assert meritorious defenses." Dkt. 10 at pg. 11, Declaration at ¶ 6. In his brief, Goldshteyn's claims to a meritorious defense are limited to his contention that a stay is warranted in this case because Page Injury's application to federally register his trademark is pending. But, Eleventh Circuit precedent is clear that the Court is not bound by the Trademark Office decision. Indeed, courts rarely grant stays in such circumstances. *See McCarthy on Trademarks,* § 32.48.

Page Injury recognizes that the Court has broad discretion to reopen a clerk's entry of default and that the Eleventh Circuit prefers that courts decide cases on the merits. In this instance, however, the facts indicate that Goldshteyn's failure to answer was willful or culpable. Goldshteyn's subsequent perfidious behavior warrants no exercise of discretion in his favor. Goldshteyn was properly served on August 13, 2025 and his lawyer reached out to Page Injury 14 days before the

3

Answer was due requesting a stay. When Page Injury refused to consent to a stay, Goldshteyn deliberately chose not to file a timely Answer, instead filing an untimely Motion to Stay. He did not seek to set aside the default until nearly a month after filing that untimely Motion. Accordingly, the Court should exercise its discretion to deny Goldshteyn's Motion.

## II.    FACTUAL BACKGROUND

On July 9, 2025, Page Injury filed its Complaint initiating the present action. Dkt 1. Page Injury served Goldshteyn as authorized under Federal Rule of Civil Procedure 4(e)(2)(B) by leaving a copy of the summons and complaint with Marian Goldstein [sic, Goldshteyn] at Goldshteyn's residence: 7904 Topanga Canyon Blvd Unit 5, Canoga Park, CA 91304. Dkt. 5. The process server also mailed a copy to Goldshteyn. *Id.*

Goldshteyn's Answer was due on or before September 3, 2025. Dkt. 5, Dkt. 6 at 1. Goldshteyn failed to file his Answer or otherwise respond by September 3, 2025. *See generally* Docket. The Clerk entered a default on September 11, 2025. *See* Dkt. 9-1.  Rather than moving to set aside the default or providing any explanation for his failure to file an Answer, Goldshteyn filed his untimely Motion on September 15, 2025, twelve (12) days after his Answer was due. Dkt. 8. Goldshteyn signed the instant Motion on October 6, 2025 over one (1) month after his Answer was due.

Goldshteyn is representing himself *pro se* in this matter. Goldshteyn is not the

"typical" pro se litigant, however. Rather, Goldshteyn holds himself out as an attorney licensed in "good standing with the California State Bar and admitted to the United States District Court for the Central District of California . . . ." Ex. 13.

Goldshteyn acknowledges that his wife was served at their shared personal residence on August 13, 2025. Dkt. 10 at 11, Declaration at ¶ 2. Goldshteyn claims that he "did not receive actual notice of the lawsuit until after I came home much later." *Id.* Goldshteyn does not include the date of his return or the date he received actual notice in his declaration. *See id.*

On August 20, 2025, just one week after Page Injury perfected service, Goldshteyn's then attorney sent Page Injury an email stating: "It has been brought to my attention that you filled [sic] on behave [sic] of your client for a declaratory judgment in Georgia Federal Court. My client is intenting [sic] on filing a request to stay proceedings  . . . ." Dkt. 9-2. Goldshteyn previously acknowledged that he authorized this email. Specifically in his Motion to Stay Goldshteyn claimed that "Plaintiff has not responded to Defendant's communication sent on August 19, 2025 [sic] regarding filing this Motion to Stay.". Dkt. 8 at 3. Despite Goldshteyn's claim to the contrary, Page Injury responded on August 29, 2025 and stated that Page Injury would not consent to a stay. Dkt. 9-2. Now, Goldshteyn claims that Dkt. 9-2 "purports to show that the message was sent, Defendant did not receive it and was unaware of its contents until Plaintiff filed its opposition" to Goldshteyn's Motion

to Stay. Dkt. 11 at 2.

Although Goldshteyn filed declarations with both the instant Motion and his Reply in Support of Motion to Stay, Goldshteyn does not include this allegation in either declaration. *See* Dkt. 10 at 10-12; Dkt. 11 at pgs. 10-12. Also notably absent from Goldshteyn's filings is any declaration from his attorney stating that she did not receive Page Injury's response. *See generally* Dkt. 10 and Dkt. 11. Mr. Zach Eyster sent the email which was printed from Ms. Robin Gentry's account. Eyster Dec. at ¶ 4, 6; Gentry Dec. at ¶¶ 3-5.  Indeed, the filed exhibit shows on its face that it was printed from Ms. Gentry's email account demonstrating that Mr. Eyster did send the email as stated in Page Injury's filing. Dkt. 9-2. Moreover, Mr. Eyster did not receive an undeliverable mail notification upon sending that email to Goldshteyn's then counsel. Eyster Dec. at ¶ 7. Indeed, Mr. Eyster replied to an email he received from Goldshteyn's then counsel (*id.* at ¶ 5), obviating any chance of misspelling the email address.

## III.  <u>ARGUMENT</u>

The Court should deny Goldshteyn's Motion at least because Goldshteyn's default was willful or culpable, he did not act promptly to correct the default, and Goldshteyn fails to present a meritorious defense.

### A. Legal Standard

A Court may set aside an entry of default for "good cause." Fed. R. Civ. P.

55(a). The good cause standard "is not susceptible to a precise formula" but the Eleventh Circuit has set forth several general guidelines for courts to consider. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion,* 88 F.3d 948, 915 (11th Cir. 1996). Among the factors that a court may consider is (1) whether the default was culpable or willful; (2) whether setting the default aside would prejudice the opposing party; (3) whether the defaulting party presents a meritorious defense; and (4) whether the defaulting party acted promptly to correct the default. *Id.; see also Steadfast Insurance Co. v. Amorguard Patrol, LLC* 1:20-cv-05167-ELR, 2021 WL 5034375, *3 (N.D. Ga. August 4, 2021).

In the Eleventh Circuit, defaults are not favored and trials on the merits are preferred. *Id.* at 951; *Steadfast,* 2021 WL 5034375 at *3. The decision whether to grant a motion to set aside an entry of default is "within the sound discretion of the court and such discretion should be exercised[2] with due regard to the peculiar facts and circumstances surrounding each case." *Steadfast,* 2021 WL 5034375 at *3

---

[2] Goldshteyn claims that *Turner Broadcasting Sys., Inc v. Sanyo Elec.,* 33 F. Supp. 2d 1311, 1316 (N.D. Ga. 1998) stands for the proposition that "[t]hese factors are not rigidly applied, and courts retain broad discretion to weight [sic] the equities." Dkt. 10 at 3. Page Injury does not dispute that statement, but the case does not appear to exist. Gentry Dec. at ¶¶ 21-24. Interestingly *Turner Broad. Sys., Inc. v. Sanyo Elec. Inc.,* 33 B.R. 996, 1001 (N.D. Ga. 1983) is a well-cited Rule 55(c) case, but the citation and year are very different than the citation Goldshteyn provides. Page Injury understands that typological mistakes happen and typographical errors in case citations can and do happen. But given that Page Injury was unable to locate other cases cited in Goldshteyn's current filings (Dkt. 10 and Dkt. 11) as discussed below, two typographical errors of this magnitude within the same citation seems unlikely.

(citing *Turner Broad. Sys., Inc. v. Sanyo Elec. Inc.,* 33 B.R. 996, 1001 (N.D. Ga. 1983)).

**B. Goldshteyn's failure to answer was willful or culpable**

Goldshteyn has not given a plausible or reasonable explanation for his failure to timely Answer. Goldshteyn does not dispute that he was properly served pursuant to Federal Rule of Civil Procedure 4(e), which permits a party to serve an individual by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Indeed, Goldshteyn admits that his wife accepted service. Dkt. 10 at 11, Declaration ¶ 2. Nor does Goldshteyn dispute that a party must file its Answer within 21 days of service whether that service is achieved through "delivering a copy of the summons and of the complaint to the individual personally under Rule 4(b)(B)(1) or through leaving a copy at the individual's residence with a person of suitable age and discretion under Rule 4(e)(B)(2). *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Only a Rule 12(b) Motion alters the time to Answer. Fed. R. Civ. P. 12(a)(4). A motion to stay is among the Rule 12(b) motions that alters the time to Answer. Fed. R. Civ. P. 12(b).

Goldshteyn's sole explanation for his failure to file an Answer is that he allegedly wasn't home when Page Injury served him and he didn't receive "actual notice of the lawsuit until much later." Dkt. 10 at 11, Declaration ¶ 2. But Goldshteyn doesn't state when he arrived home or when he allegedly "actual notice." *See*

*generally* Dkt. 10. Goldshteyn's argument fails for at least two (2) reasons.

First, Goldshteyn does not provide any authority that Courts in the Eleventh Circuit excuse a party's failure to Answer after being properly served based on an alleged lack of "actual notice." Instead, Goldshteyn "cites" a case that appears not to exist. Goldshteyn claims that *United Sttes[3] v. One 2000 Mercedes Benz,* No. 1:03-cv-3533-WSD, 2004 WL 540441 at *2 (N.D. Ga. Mar. 15, 2004) stands for the proposition that "[c]ourts routinely recognize that substitute service resulting in delayed actual notice may constitute good cause under Rule 55(c)." Dkt. 10 at pg. 3-4. But counsel for Page Injury could not retrieve the case using either the Westlaw citation or the case number. Gentry Dec. at ¶¶ 7-20. A further search on Westlaw using the case name also failed to locate a Northern District of Geogia case. Undersigned counsel surmises that the citations may be "hallucinations" owing to Goldshteyn's use of artificial intelligence large language model (LLM) tools in drafting his Motion.

Second, even if the case were an accurate statement of the law, Goldshteyn has failed to show there is good cause in this instance. Goldshteyn has not given a plausible explanation for his failure to timely Answer. Indeed, the facts demonstrate that his failure was culpable or willful.

---

[3] Page Injury assumes that this is a misspelling of the word "States". Whether or not it is, Page Injury searches using both the word "sttes" and "states" could not locate the case.

Goldshteyn states:

> The Clerk entered default on September 10, 2025, following Plaintiffs
> motion filed just one business day earlier (Dkt. 6). Due to the substitute
> service, Defendant did not receive actual notice of the Complaint until
> later.

Dkt. 10 at 2. Whether the result of inartful drafting or a deliberate attempt to mislead the Court, Goldshteyn implies that he did not receive "actual notice" of the Complaint until after September 11. That is not true.

Goldshteyn was aware of the Complaint at least as early as August 20, 2025 – 14 days before his Answer was due and 22 days before the Clerk's entry of default. Specifically, on August 20, 2025, Goldshteyn's then counsel reached out to Page Injury acknowledging that this lawsuit had been "brought to [her] attention" and requesting that Page Injury consent to a stay. Dkt. 9-2. There is no dispute that Goldshteyn was aware of his attorney's communication with Page Injury because he referenced that email in his Motion to Stay, filed after the entry of default. Dkt. 8 at 3.

Given the August 20, 2025 email from Goldshteyn's former counsel, Goldshteyn's failure to tell the Court what day he returned home from his trip out of town or what day he received "actual notice" of this lawsuit is a glaring omission. The evidence of record shows that Goldshteyn had "actual notice" of the case by August 20, just 7 days after his wife was served on August 13, 2025. Accordingly, Goldshteyn's use of the term "much later" cannot include a span a time of greater

than seven (7) days.

Goldshteyn's claim that he failed to file an Answer only because he did not have actual notice the August 13, 2025 service until "much later" is neither reasonable nor plausible.

Goldshteyn is an attorney who is admitted to practice in the Central District of California. Therefore, he is presumptively aware of the Federal Rules of Civil Procedure and understands a litigant's obligations to Answer or otherwise respond within 21 days of service of a summons and Complaint. He had also engaged counsel to contact Page Injury. His counsel is also presumptively aware of a defendant's obligations to Answer.

Despite that knowledge, Goldshteyn failed to Answer. Instead, he filed an untimely Motion to Stay without acknowledging that his time to Answer had passed. Goldshteyn's failure to immediately remedy his default and instead asking the Court to stay the action demonstrates that his refusal to answer was willful and culpable.

Goldshteyn did not act promptly to open the default. Goldshteyn makes no effort to explain why he filed an untimely Motion to Stay instead of an Answer or Rule 12 Motion. *See generally* Dkt. 8, 10. Nor does Goldshteyn explain why he waited nearly one month after his motion to stay to file the instant Motion. Instead, he disingenuously claims that:

> I immediately took steps to respond to the initiated litigation. I filed a
> Motion to Stay on September 15, 2025, and began preparing this motion

to set aside the default.

Dkt. 10 at 11, Declaration ¶ 3. There was nothing "immediate" about Goldshteyn's actions.

Goldshteyn's failure to file an Answer by September 3, 2025, his failure to file a motion to set aside the default with his Motion to Stay, and Goldshteyn's filing of this motion nearly a month later, only after Page Injury opposed his Motion to Stay based on his default shows that Goldshteyn's failure to file an Answer was culpable or willful. *See e.g., U.S. Bank Trust, N.A. v. Tobin,* 1:17-cv-01323-ELR, 2018 WL 1311248, *2 (N.D. Ga. Jan. 25, 2018) ("fact that Defendants did not respond to the Amended Complaint, did not respond to Plaintiffs Motion for Default Judgment, and did not file their Motion to Dismiss until over a month after they filed their initial objections to the R&R (arguing that they were not aware of the Amended Complaint) supports the contention that Defendants' default is culpable or willful").

Goldshteyn's actions are willful or culpable. Goldshteyn, an attorney, intentionally chose to disregard the Federal Rules of Civil Procedure. Instead of filing an Answer, he made the deliberate decision to file an untimely Motion to Stay. Only after Page Injury opposed that motion on procedural grounds, did Goldshteyn act to set aside the default. But Goldshteyn has not provided a reasonable or plausible explanation for his default. Because Goldshteyn deliberately disregarded the Federal Rules and this judicial proceeding, the Court need not consider the other factors but

deny Goldshteyn's Motion on this basis alone. *See Steadfast*, 2021 WL 5034375, *4 ("where a party demonstrates an intentional or willful disregard of judicial proceedings, good cause to set aside default does not exist, and the court need not make other findings in rightfully denying a motion to set aside such default." citing *Compania Interamericana,* 88 F.3d at 951)).

### C. Goldshteyn has not shown that he has a meritorious defense

Goldshteyn's declaration does not support his claim that he has a meritorious defense. In fact, Goldshteyn refuses to state, under oath, that he will bring a meritorious defense:

> I intent [sic] to file a responsive pleading and ***possibly*** assert meritorious defenses, including trademark infringement, likelihood of confusion, and improper declaratory relief.

Dkt. 10 at 11, Declaration ¶ 6 (emphasis added). Because Goldshteyn did not Answer with his Motion or include a proposed Answer as an exhibit to the Motion, Goldshteyn's declaration is insufficient to establish that he will actually assert a meritorious defense.

### 1. Goldshteyn's reliance on the alleged significance of the Trademark Office's examination of Page Injury's application for federal registration is misplaced

Goldshteyn's claims in the Motion to have a meritorious defense rest on his argument that the Trademark Office's examination of Page Injury's trademark application is relevant to this proceeding. Goldshteyn's claims are factually

misleading as well as against binding Eleventh Circuit precedent.

### a. The Letter of Protest Memorandum is irrelevant

First, Goldshteyn cites to the Trademark Office's recent Letter of Protest Memorandum which cited "potential confusion" as support for his claim that there is a likelihood of confusion between Page Injury's 844-SPARTAN trademark and Goldshteyn's SPARTAN LAW mark. Dkt. 10 at pg. 4-5. The inferences that Goldshteyn attempts to draw from the Trademark Office's routine Letter of Protest Memorandum are unsupported. Specifically, the LOP Memorandum explicitly states that its "consideration of a letter of protest filed before publication is not a legal determination by the USPTO of registrability . . . ." Dkt. 8 at 9. Indeed, the memorandum" merely serves to bring the submitted evidence to the attention of the examining attorney, who determines whether a refusal or requirement should be raised or ultimately made final." See 37 C.F.R. §2.149(d)(1). *Id.*

Accordingly, the LOP Memorandum is *not* an indication of whether or not the Trademark Office will find that there is a likelihood of confusion between the marks. Indeed, it is only an indication that Goldshteyn apparently attempted to insert himself into the *ex parte* examination process in preference to litigating this case in Federal Court. Notably, Goldshteyn does not provide the letter of protest that he presumably sent to the PTO.

> **b.**    **The Trademark Office's determination of the registrability of Page Injury's 844-Spartan Mark is not relevant to the Court's determination of non-infringement**

Goldshteyn 's assertion that the Trademark Office's determination of registrability is relevant to this proceeding is similarly irrelevant. The Trademark Office has not made any determination regarding registrability. Even if the Trademark Office had made a determination that the 844-SPARTAN mark was unregistrable – which it has not – that determination would have little, if any, impact on this case.

Eleventh Circuit precedent is clear that Trademark Office decisions are not binding on district courts. *See, e.g.*, *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 789 n.9 (11th Cir. 2020) ("The federal courts have been unanimous, however, in holding that we are not *bound* by the PTO's confusingly similar analysis."). Indeed, the Eleventh Circuit goes further noting that "a district court deciding a trademark infringement action is not bound by, *nor ought to be persuaded by,* a USPTO decision on registration." *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1169 (11th Cir. 2019).

Goldshteyn purports to rely on three cases to support his claim that purport to support his claim that Trademark Office decisions are "routinely considered as persuasive authority." Dkt. 11 at pg. 3. All three are outside of this jurisdiction. Courts in this jurisdiction are reluctant to give great weight to Trademark Office

decisions because the evidence before the Court is usually much different than that before the Trademark Office in an *ex parte* review. *See e.g., Royal Palm,* 950 F.3d at 789 n. 9 (finding that any obligation to defer to the Trademark Office decision was "especially weak" where the Trademark Office "failed to weigh many of the considerations that this Court has deemed relevant to deciding the 'likelihood of confusion' question."); *CORD:USE Cord Blood Bank, Inc. v. CBR Systems, Inc.,* No. 6:11-cv-893-Orl-36KRS, 2012 WL 8745155 (M.D. Fla Sept. 26, 2012) (refusing to give weight to the Trademark Office determination because plaintiff could not point to any evidence that the Trademark Office considered the issue of whether mark was suggestive or descriptive but instead refused registration based on other prongs of the likelihood of confusion test).

Goldshteyn's reliance on *Goya Foods, Inc v. Tropicana Prods., Inc.,* 846 F.2d 848, 853-54 (2d Cir. 1988) is misplaced for a second reason. Goldshteyn claims that *Goya Foods* stands for the proposition that Trademark Office findings on confusion are relevant and may simplify the litigation. Dkt. 11 at pg. 3. But, in fact, the holding in *Goya* was the exact opposite. The Second Circuit held that even if the district court had the results of the Trademark Office's decision, the district court "would still independently have to determine the validity and priority of the marks and the likelihood of consumer confusion as to the source of the goods . . . with this latter issue to be resolve not by reference to a registration determination by the PTO but

by application of the multi-factor balancing test. . . ." *Id.* at 854. The Second Circuit provided a thorough basis for its holding. The Second Circuit specifically held that "the absence of a registration creates no contrary presumptions, and the PTO's denial of Goya's application to re-register its marks would established no legally compelled adverse consequences in Goya's actions seeking a declaration of non-infringement of Tropicana's marks." 846 F.2d at 854. The Second Circuit further explained its "inclination against according excessive defense to pending PTO proceedings is reinforced upon consideration of the nature of the registration determination itself." *Id.* Among the reasons, were the court's long-standing familiarity with the likelihood of confusion analysis and resolving trademark disputes as well as need for prompt adjudication. *Id. at* 853. The court noted that where the district court suit concerns infringement, "the interest in prompt adjudication far outweighs the value of having the views of the PTO." *Id.* The Court concluded that even if the district court had the results of the Trademark Office's decision, the district court "would still independently have to determine the validity and priority of the marks and the likelihood of consumer confusion as to the source of the goods . . . with this latter issue to be resolve not by reference to a registration determination by the PTO but by application of the multi-factor balancing test. . . ." *Id.* at 854.

Worse still is Goldshteyn's reliance on "*Vintage Wine Estates Trademark Litig.* No. 3:21-cv-01532, 2021 WL 1200097, at * 3 (N.D. Cal. March 29, 2021)

17

(granting stay pending USPTO review because "the PTO's decision will likely simplify the issues before the Court.")." Dkt. 11 at pg. 3.  Despite the apparent detailed case number and Westlaw citation, the case appears not to exist. Page Injury's attorneys input the "2021 WL 1200097" Westlaw citation but Westlaw did not return any cases having that citation. Gentry Dec. at ¶¶ 25-26. Page Injury also checked the Northern District of California's PACER system and was unable to retrieve the case using the civil action number "3:21-cv-01532" or using the name Vintage Wine Estates. Gentry Dec. at ¶¶ 27-37. The name search returned three (3) cases with that entity as a plaintiff, but all had case numbers well before 2021 and from the docket reports, there were no orders on motions to stay in those cases. Gentry Dec. at ¶¶ 27-37. Again, these facts suggest an "hallucination" owing to Goldshteyn's use of artificial intelligence large language model (LLM) tools in drafting his Motion.

Goldshteyn's claim that the Trademark Office's "decision will materially inform the resolution of this case and supports Defendant's request for a stay" (Dkt 10 at 5) is unsupported by any precedent. Indeed, even when related proceedings are pending in and adversarial proceeding before both the Trademark Trial and Appeal Board and in district courts, "a court will almost always refuse to stay and suspend to wait for the TTAB decision." *McCarthy on Trademarks,* § 32.48 (stating that a stay may be justified "in the rare case in which the only issue before the court is the

right to a registration") (collecting cases refusing a stay including numerous cases within the Eleventh Circuit). Thus, Goldshteyn's trumpeting of Page Injury's right to request an expedited registration is similarly irrelevant.

> ## 2. Goldshteyn fails to support his other alleged meritorious defenses to this action

Goldshteyn's argument in his Motion that he has meritorious defenses is limited to his reliance on the Trademark Office's LOP Memorandum. Dkt. 10 at 5. And, notably, Goldshteyn did not attach a proposed Answer to his Motion. Instead, he merely included the bare bones statement that he "intent [sic] a responsive pleading and *possibly* assert meritorious defenses including trademark infringement, likelihood of confusion, and improper declaratory relief." Not only does Goldshteyn admit that he might not raise a meritorious defense, but he also provides no facts upon which such defenses would allegedly rest. Goldshteyn has thus failed to carry his burden to show a meritorious defense.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Page Injury respectfully requests that Goldshteyn's Motion be denied in its entirety.

Respectfully submitted this 20th day of October, 2025.

*/s/Melanie K. Lane*
Kennington R. Groff
GA Bar No.: 782901

19

Melanie K. Lane
GA Bar No.: 831941
Robin Gentry
GA Bar No.: 289899
Zachary C. Eyster
GA Bar No.: 192335

BEKIARES ELIEZER, LLP
2870 Peachtree Rd. #512
Atlanta, Georgia 30305
Telephone: (404) 537-3686
kgroff@founderslegal.com
mlane@founderslegal.com
rgentry@founderslegal.com
zeyster@founderslegal.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Stay has been prepared in accordance with the font type and margin requirements of LR 5.1, NDGa, using font type of Times New Roman and a point size of 14.


Dated: October 20, 2025                    /s/ Melanie K. Lane
                                           Melanie K. Lane

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAGE INJURY LAW, LLC,                    )
                                          )
          Plaintiff,                      )
                                          )        Case No.: 1:25-cv-03797-ELR
v.                                        )
                                          )
YAN GOLDSHTEYN,                           )
                                          )
          Defendant.                      )
_____          )

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY was served on Plaintiff via email and U.S. First Class Mail on October 20, 2025 to the following:

Yan Goldshteyn
yan@spartanlawcorp.com
427 N Canon Drive, Suite 212, Beverly Hills, CA 90210

/s/Melanie K. Lane
Melanie K. Lane