# EXHIBIT 1

Case 1:25-cv-03797-ELR   Document 14-3   Filed 10/20/25   Page 1 of 8

Usha (India), Ltd. v. Honeywell Intern. Inc., Not Reported in F.Supp.2d (2004)
2004 WL 540441

KeyCite Yellow Flag
Affirmed as Modified and Remanded by USHA (India), Ltd. v. Honeywell Intern., Inc., 2nd Cir.(N.Y.), June 13, 2005

2004 WL 540441
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

USHA (INDIA), LTD.; and Usha Information Systems, Ltd.; and RKKR Infotech Private, Ltd., individually and on behalf of Usha Amorphous Metals, Ltd., Plaintiffs,
v.
HONEYWELL INTERNATIONAL INC., f/k/a Alliedsignal Inc.; Hitachi Metals America, Ltd.; and Hitachi Metals, Ltd., Defendants.

No. 03 Civ. 0494(DC).
|
March 17, 2004.

**Attorneys and Law Firms**

Richard C. Ebeling, P.C., By: Richard C. Ebeling, White Plains, New York, for Plaintiffs.

Kirkland & Ellis LLP, By: Jonathan F. Putnam, Shiva A. Sooudi, David T. Huang, New York, New York, for Defendants Honeywell and Hitachi.

Morgan Lewis & Bockius, By: Richard A. Mescon, New York, New York, for Defendants Hitachi.

*MEMORANDUM DECISION*

CHIN, J.

**\*1** This diversity case arises from a joint venture between plaintiffs Usha (India), Ltd., Usha Information Systems, Ltd., and RKKR Infotech Private, Ltd. (collectively "Usha"), and defendant Honeywell International, Inc. ("Honeywell") to produce amorphous metals to be sold and used in India. Plaintiffs, all Indian corporations, have brought a series of claims arising under Indian law alleging that Honeywell sabotaged and misappropriated assets from their joint venture company. Additionally, plaintiffs bring claims against defendant Hitachi Metals America, Ltd. ("Hitachi") alleging that Hitachi knowingly purchased assets from Honeywell that were misappropriated from Usha. Honeywell moves to dismiss on the grounds of *forum non conveniens,* arguing that India is the more appropriate and convenient forum for this case. In the alternative, Honeywell moves to compel arbitration or to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion to dismiss on the grounds of *forum non conveniens* is granted.

Usha (India), Ltd. v. Honeywell Intern. Inc., Not Reported in F.Supp.2d (2004)

2004 WL 540441

STATEMENT OF THE CASE

I. *The Facts*
For purposes of this motion, the facts alleged in Usha's amended complaint are assumed to be true. They are summarized as follows:

Desiring to gain entry into the Indian market, Honeywell approached Usha in the mid-1980's seeking to form a joint venture. (Compl.¶ 15).[1] Under Indian law then in effect, multinational corporations seeking a corporate presence in India were required to collaborate with indigenous Indian companies, and were prohibited from owning 100% of an Indian subsidiary or establishing a direct corporate presence in India. (*Id.*). On March 23, 1987, Usha and Honeywell executed a Memorandum of Understanding setting forth the parties' agreement to jointly form an Indian corporation under the Indian Companies Act of 1956. (*Id.* ¶ 17). The corporation, Usha Amorphous Metals, Ltd. ("UAML"), was to serve as a vehicle for the joint operation of a manufacturing facility in India. (*Id.* ¶ 17). The parties entered into a shareholders agreement governing the joint venture, which provided that Honeywell would own 40% of UAML. (*Id.* ¶ 19). Additionally, the UAML board of directors was to consist of at least three Usha-sponsored directors and two Honeywell-sponsored directors. (*Id.*).

On January 19, 1988, the Indian Secretariat of Industrial Approvals granted UAML permission to manufacture amorphous metal products. (*Id.* ¶ 23). UAML was incorporated with ownership split 60/40 between Usha and Honeywell. (*Id.* ¶ 24).

In 1993, Honeywell asked Usha for permission to increase its share of UAML so that ownership would be split 50/50 between them. (*Id.* ¶ 27). Usha agreed to allow Honeywell to become an equal partner and, shortly thereafter, the parties also agreed to expand UAML. (*Id.* ¶ 29). To accomplish the expansion, Honeywell and Usha agreed that Honeywell would sell technology and provide technological expertise to UAML and Usha would sell space to UAML to accommodate expanded operations. (*Id.*). As payment, each party received an equal amount of UAML stock. (*Id.* ¶ 30).

**\*2** Allegedly, Honeywell intended to use its increased voting power to undermine UAML in anticipation of forming a wholly owned subsidiary to manufacture amorphous metal products in competition with UAML. (*Id.* ¶ 32). In furtherance of this scheme, Honeywell provided worthless technology to UAML while simultaneously donating valuable technology throughout India in an effort to destroy UAML's competitive advantage. (*Id.* ¶ 33). By conspiring with its sponsored board members and through its newly attained voting parity, Honeywell prevented Usha from taking action to protect its interests. (*Id.*).

In 1995 the Indian foreign investment laws were changed to permit foreign entities to establish wholly owned subsidiaries in India. (*Id.* ¶ 43). On August 9, 1995, Honeywell caused the formation of an Indian company known as AlliedSignal India Private Limited ("AlliedSignal"). (*Id.* ¶ 39). In September 1996, Honeywell obtained permission from the Indian Foreign Investment Promotion Board to invest in AlliedSignal as a 100% owned subsidiary. (*Id.* ¶ 44). Two years later, AlliedSignal obtained permission from the Indian government to produce the same amorphous metal products manufactured by UAML. (*Id.* ¶ 47). Thereafter, AlliedSignal started production and immediately began to erode UAML's market share. (*Id.* ¶ 49).

To ensure AlliedSignal's advantage over UAML, Honeywell appointed Sundar Mulchandani, a former Honeywell-sponsored director of UAML, as CEO of AlliedSignal. (*Id.* ¶ 50). Allegedly, Mulchandani continued to interact with the Honeywell-sponsored directors of UAML and acquired information and assistance to boost the startup of AlliedSignal's manufacturing facility. (*Id.* ¶ 52). In conspiracy with other Honeywell-sponsored UAML directors, AlliedSignal also obtained trade secrets and valuable technological information from UAML. (*Id.* ¶¶ 54-56). Additionally, AlliedSignal induced key UAML employees to join AlliedSignal. (*Id.* ¶ 57).

Honeywell continued to undermine UAML by cancelling orders placed with UAML, forcing UAML to purchase unwanted surplus material from Honeywell, supplying substandard raw material to UAML and charging inflated prices, and pilfering UAML's key personnel. (*Id.* ¶ 60). Honeywell also discontinued ordering from UAML, despite having induced UAML to purchase technology and equipment necessary to produce a product that Honeywell had promised to buy. (*Id.*). Additionally, Honeywell eliminated Usha's influence in UAML by blocking the reappointment of Usha-sponsored directors. (*Id.*).

On May 14, 2003, a Honeywell-sponsored member of the UAML board of directors notified UAML's board that Honeywell

**Usha (India), Ltd. v. Honeywell Intern. Inc., Not Reported in F.Supp.2d (2004)**
2004 WL 540441

had entered into an agreement to sell its Metglas Solutions Business ("Metglas") to Hitachi. (*Id.* ¶ 61). Allegedly, much of the technology and assets to be sold to Hitachi were misappropriated from UAML over the years. (*Id.* ¶ 64). Neither Usha nor UAML stands to receive any benefit from Honeywell's sale of Metglas to Hitachi. (*Id.* ¶ 65).

II. *Procedural History*

**\*3** Usha filed the original complaint in this action on January 22, 2003. Following a pre-motion conference, Usha filed an amended complaint on June 20, 2003 to add claims against Hitachi. The amended complaint asserts claims against Honeywell for breach of fiduciary duty, breach of duties analogous to those arising under the Indian Partnership Act, violation of Section 291 of the Indian Companies Act of 1956, cheating and breach of trust in violation of the Indian Penal Code, failure to reimburse for equipment Honeywell induced UAML to buy, conspiracy, conversion of misappropriated UAML assets, unfair competition, misappropriation and unlawful diversion of trade secrets and other intellectual property of UAML, constructive trust upon and accounting of the profits of AlliedSignal, constructive trust upon and accounting of the consideration to be received from the sale of Metglas, and unjust enrichment. The claims against Hitachi are for conspiracy, unfair competition, misappropriation and unlawful diversion of trade secrets and other intellectual property of UAML, and constructive trust upon the allegedly misappropriated UAML assets and the profits derived therefrom.

Before the Court is Honeywell's motion to dismiss under the doctrine of *forum non conveniens.* Hitachi joins in Honeywell's motion. Honeywell also seeks dismissal on the alternative grounds that the parties are subject to a mandatory arbitration clause, and on the grounds that Usha has failed to state a claim under Indian law.

DISCUSSION

I. *The Forum Non Conveniens Doctrine*

Under the common law doctrine of *forum non conveniens,* a court with proper jurisdiction and venue over a matter may refrain from hearing the case if another significantly more appropriate forum exists. *See Nationsbank of Florida v. Banco Exterior de Espana,* 867 F.Supp. 167, 169 (S.D.N.Y.1994).[2]

"An evaluation of a motion to dismiss on the grounds of forum non conveniens proceeds in several stages." *Pollux Holding Ltd. v. The Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir.2003). The first level of inquiry requires a determination of the degree of deference to be accorded to a plaintiff's choice of forum. *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73 (2d Cir.2001). Next, the Court determine whether an adequate alternative forum is available. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506-07 (1947). Finally, if an alternative forum is available, the Court must then weigh private and public considerations to determine whether adjudication in the alternative forum is more appropriate. *Id.; see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 254 n. 22 (1981). While the moving party bears the burden of showing that an alternative forum is clearly more appropriate, *Oil Basins Ltd. v. Broken Hill Proprietary Co.,* 613 F.Supp. 483, 489 (S.D.N.Y.1985), the decision to grant or deny the motion is within the Court's discretion. *Piper Aircraft Co.,* 454 U.S. at 257.

II. *Application*

Case 1:25-cv-03797-ELR   Document 14-3   Filed 10/20/25   Page 5 of 8

Usha (India), Ltd. v. Honeywell Intern. Inc., Not Reported in F.Supp.2d (2004)
2004 WL 540441

***4** The relevant factors support dismissing this case on *forum non conveniens* grounds. For the reasons set forth below, the claim is dismissed so that it may be litigated in a more appropriate forum. Accordingly, I do not address the issues raised by the parties concerning the alternative grounds for dismissal.

A. *Deference to Usha's Choice of Forum*

Courts must "give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant, and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by a tactical advantage." *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 74 (2d Cir.2001). Here, plaintiffs are all Indian corporations doing business principally in India. Honeywell is neither headquartered nor incorporated in New York. (Compl.¶ 1(a)). Indeed, Usha concedes that the District of New Jersey, where Honeywell's headquarters are located, may be the more appropriate domestic forum. (Usha Opp. Br. at 19-20). Finally, although Usha argues that India is not a viable alternative forum because of the delays in the judicial system, it nonetheless opposes Honeywell's motion to compel arbitration before the International Chamber of Commerce where there are no alleged delays.

Under these circumstances, it is apparent that Usha's choice of the Southern District of New York is the result of pure forum-shopping. Accordingly, Usha's choice of forum is entitled to less deference. *Iragorri,* at 72.

B. *Adequate Alternative Forum*

All of the claims are brought under Indian law and Honeywell has agreed to submit to the jurisdiction of the New Delhi High Court. (Dorsey Decl. ¶ 30).[3] Ordinarily, these factors are sufficient to establish the existence of an alternative forum. *See Affadda v. Fenn,* 159 F.3d 41, 45 (2d Cir.1998) (citing *Piper,* 454 U.S. at 254 n. 22). Usha, however, argues that the backlog of cases in India's legal system renders the Indian Court an inadequate alternative forum.

After considering the affidavits submitted on behalf of both parties, I conclude that India is an adequate forum to hear this case. First, the number of cases pending in the New Delhi High Court has decreased by 75% due to a recent increase in the amount in controversy required for Indian High Court jurisdiction.[4] Additionally, the Indian Code of Civil Procedure has recently been amended in an effort to reduce delays and streamline case management. (Makhija Aff. ¶ D(15); Makhija Rebuttal Aff. ¶ C). Furthermore, a related dispute is already being litigated in India; it has proceeded in a manner that demonstrates that the Indian courts can and will handle this matter expeditiously.[5] In light of these factors, Honeywell's expert's opinion that the Delhi High Court can resolve this case in two to three years (Makhija Aff. ¶ G) is more likely to be correct than Usha's prediction of 10-15 years.

***5** To support its claim that the Indian Courts are hopelessly backlogged, Usha cites a Third Circuit opinion affirming a denial of a motion to dismiss on forum non conveniens grounds and a recent unpublished New York State Supreme Court decision. *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220 (3d Cir.1995); *Shin-Etsu Chem. Co., Ltd. v. Icici Bank Ltd.,* 603711/02 (N.Y.Sup.Ct. Aug. 5, 2003). Both decisions credited expert opinions predicting delays of up to twenty-five years to resolve a case in India. *Bhatnagar,* however, involved a personal injury claim and the Calcutta High Court. *52 F.3d at 1226.* It is unclear which Indian court was the proposed alternative forum in *Shin-Etsu.* Furthermore, *Bhatnagar* was decided almost nine years ago and therefore does not reflect the recent reforms in the Indian legal system. Despite its recency, *Shin-Etsu* also apparently does not address the most recent changes to the Indian legal system, such as the increase of the amount in controversy requirement of India's High Courts. *See Shin-Etsu,* at 11 ("While the defendant focuses on recent procedural amendments enacted in recognition of the inordinate delays in the Indian courts, these amendments effect changes made to Indian law only with respect to filing a written statement and lists of witnesses.").

For these reasons, I find that Honeywell has established that the New Delhi High Court is an adequate alternative forum.

Case 1:25-cv-03797-ELR   Document 14-3   Filed 10/20/25   Page 6 of 8

**Usha (India), Ltd. v. Honeywell Intern. Inc., Not Reported in F.Supp.2d (2004)**
2004 WL 540441

C. *Balancing Private and Public Interest Factors*

1. *The Private Interests of the Parties*

The private interests of the parties to be weighed in considering a *forum non conveniens* motion include the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper Aircraft Co,* 454 U.S. at 241 n. 6. Here, these factors clearly favor an Indian forum.

Plaintiffs are all Indian corporations with neither offices nor registered agents in the United States. Almost all of the key allegations in the First Amended Complaint relate to events that occurred in India. Indeed, the application and approval process required to form UAML was undertaken in India, and almost all of the relevant actions concerning the alleged stealing of technology and trade designs from UAML took place in India. Finally, the alleged pilfering of UAML's employees and misappropriation of UAML's assets and subsequent sale to Hitachi took place in India. The only events that took place in the United States are the purported actions of Honeywell's board of directors in furtherance of the alleged conspiracy between Honeywell and AlliedSignal. (*See* Krishnimani Aff. ¶ E(5)).

The majority of the documentary evidence pertaining to Usha's claims is located in India. UAML's financial reports, business plans, regulatory filings, machine designs, employment records, operations and production, and sales and marketing documents are all located in India. (Dorsey Decl. ¶ 15). Furthermore, documents reflecting AlliedSignal's activities relevant to Usha's claims are located in India, including its hiring polices, employment records, operations, machine designs, and marketing and sales documents. (*Id.* ¶ 17).

**\*6** Many third-party witnesses reside in India. (*See* Dorsey Decl. ¶ 10). Because India is not a signatory to the Hague Convention on taking discovery through letters rogatory or letters of request, the parties would have no assurance of obtaining discovery from any unwilling witnesses if the case were tried in the United States. *Ramakrishna v. Besser Co.,* 172 F.Supp.2d 926, 932 (E.D.Mich.2001). Instead, they would have to rely on an Indian High Court's response to a letter request. (*See* Krishnimani Aff. ¶ E(7)). As for former employees, "[s]ome courts have presumed, in the absence of evidence to the contrary, that former employees are willing to testify on behalf of their former employers." *See Manela v. Garantia Banking, Ltd.,* 940 F.Supp. 584, 592 n. 14 (S.D.N.Y.1996). Litigating Usha's claims in India, however, simply avoids the uncertainty of such a presumption and increases the likelihood that the parties will have the benefit of as many witnesses with relevant information as possible.

Usha argues that a preliminary list of witnesses suggests that a majority of witnesses who were "Honeywell-controlled UAML directors" are Americans. (Opp. Br. at 22; *see* December 4, 2001 Letter attached to Kanodia Aff.). Usha concedes, however, that without discovery it does not know how many of these individuals are current Honeywell employees or where these individuals reside. Therefore, this list of names does little to guide the Court's determination of the more convenient forum. Furthermore, N.M. Krishnimani's affidavit regarding the location of documentary evidence is unconvincing. The affidavit makes conclusions regarding the location of documents without disclosing a source of information underlying the conclusions. It also appears to grossly underestimate the type and volume of documents likely to be involved in this litigation where Usha seeks more than $100 million in damages for alleged activities spanning many years, involving a multinational corporation and its subsidiaries.

2. *Public Interest Factors*

The public interest factors to be weighed in considering a *forum non conveniens* motion are: the administrative difficulties

**Usha (India), Ltd. v. Honeywell Intern. Inc., Not Reported in F.Supp.2d (2004)**
2004 WL 540441

associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the "local interest in having localized controversies decided at home"; and avoiding difficult problems in conflict of laws and the application of foreign law. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947).

Neither of the first two factors favors dismissal. Court congestion is not an issue in this Court. Likewise, no jury is likely to be burdened as Usha has not filed a jury demand and Honeywell has given no indication that it intends to request a jury trial.

The remaining two factors, however, strongly favor dismissal. New York is far removed from the operative facts underlying Usha's allegations against Honeywell and Hitachi. None of the operative facts occurred here. Moreover, Honeywell is a Delaware corporation with its principal office in New Jersey. (Compl.¶ 1(a)). Honeywell has no offices, subsidiaries, agents, or employees relating to its amorphous metals business in the Southern District of New York. (Dorsey Decl. ¶ 27).

**\*7** In contrast, India has a strong interest in resolving the issues raised by this suit. Usha's claims are based on issues of Indian corporate governance, the duties between shareholders of Indian corporations, and the duties between joint venture partners under Indian partnership law. Furthermore, Usha alleges that Honeywell concealed information from India's Foreign Investment Promotion Board when it sought permission to establish AlliedSignal as a wholly owned subsidiary. Surely, India has a far stronger interest in the resolution of these issues than the Southern District of New York.

Finally, dismissal on *forum non conveniens* grounds is appropriate because this Court would otherwise be required to determine and apply law from the unfamiliar realm of the Indian Partnership Act, the Indian Companies Act, the Indian Penal Code, and Indian common law. Usha's assertion that the Indian legal issues raised in its complaint are not complex is wholly unconvincing in light of the arguments raised by the parties in reference to Honeywell's motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Honeywell submitted the affidavit of A.M. Ahmadi, former Chief Justice of the Supreme Court of India, in support of its argument that Usha's claims are not cognizable under Indian law. Usha responded with an affidavit from Arun Kathpalia, a partner in "one of the older law firms in Delhi." (Ebeling Decl., Exh. 2 ¶ 2). I need not evaluate the relative merit of these arguments because one thing is abundantly clear: there is ample room for disagreement even among Indian legal experts regarding the interpretation of Indian law and its application to Usha's claims. I therefore find that public interest considerations weigh heavily in favor of dismissal of this action on *forum non conveniens* grounds.

## CONCLUSION

Honeywell's motion to dismiss Usha's claims on the grounds of *forum non conveniens* is granted. The Amended Complaint is dismissed as to both Honeywell and Hitachi without prejudice to refiling of the claims in India or before the International Chamber of Commerce. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 540441

---

**Footnotes**

[1]   References to "Compl." are to the First Amended Complaint filed on June 20, 2003.

**Usha (India), Ltd. v. Honeywell Intern. Inc., Not Reported in F.Supp.2d (2004)**
2004 WL 540441

| | |
|---|---|
| 2 | In its opposition, Usha urges the Court to consider transferring venue to the District of New Jersey under 28 U.S.C. § 1404(a) instead of granting dismissal under *forum non conveniens*. A venue transfer pursuant to 28 U.S.C. § 1404(a) is appropriate where good reasons support conducting the litigation in the United States instead of a foreign country. *See Iragorri,* 274 F.3d at 72 n. 4 (2d Cir.2001). Here, India is clearly the more appropriate forum. Accordingly, I decline Usha's invitation to transfer venue. |
| 3 | Although Hitachi does not explicitly consent to the jurisdiction of the Delhi High Court, it does join Honeywell's arguments for dismissal on *forum non conveniens* grounds. (Hitachi Br. in Support of Mot. to Dismiss at 10). Because Honeywell's arguments make little sense unless the Delhi High Court is able to exercise jurisdiction, and because Hitachi allegedly improperly purchased assets in India, I conclude that Hitachi is subject to the jurisdiction of the Delhi High Court. |
| 4 | The amount in controversy required for Indian High Court jurisdiction was increased recently from the equivalent of approximately $11,000 to the equivalent of approximately $43,500. (Makhija Aff. ¶ D(18); Makhija Rebuttal Aff. ¶ A). |
| 5 | On September 30, 2003, Honeywell filed a petition to enjoin Usha from transferring shares of UAML in violation of the shareholder agreement. (Dorsey Decl. ¶ 6). The Delhi High Court held a hearing the next day and entered an interim injunction against Usha. (*Id.* ¶ 7; Exh. 4). |

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.