# EXHIBIT 6

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

33 F.Supp.2d 1306
United States District Court, D. Kansas.

James R. PEARSON, Plaintiff,
v.
CITY OF MANHATTAN, Defendant.

No. 97–4086–DES
|
Feb. 1, 1999.

**Synopsis**
Former city manager, who was a double amputee below the knee, brought action against city, alleging he was terminated in violation of the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA). City moved for summary judgment. The District Court, Saffels, J., held that: (1) comments made by city commissioners were not direct evidence of disability discrimination; (2) manager established that he was a disabled person within meaning of ADA; (3) manager was terminated under conditions which gave rise to inference that termination was based on his disability; (4) manager's inadequate job performance was legitimate, non-disability and non-age based reason for his termination; (5) belief of one city commissioner and opinion of newspaper reporter, were not sufficient evidence to show that city's proffered reason for termination was pretext for disability discrimination; (6) city's proffered reason for terminating manager was not pretext for retaliation under ADA; and (7) comments made by city commissioners were not direct evidence of discrimination under ADEA.

Motion granted.

**Procedural Posture(s):** Motion for Summary Judgment.

West Headnotes (11)

**[1]    Civil Rights** ⚷ Practices prohibited or required in general; elements

To prevail on a claim of discriminatory discharge under the ADA, a plaintiff must establish that: (1) he is a disabled person within the meaning of the ADA; (2) he is qualified, meaning that with or without reasonable accommodation, he is still able to perform the essential functions of his job; and (3) he was terminated because of his disability. Americans with Disabilities Act of 1990, § 102(a), 🚩 42 U.S.C.A. § 12112(a).

**[2]    Civil Rights** ⚷ Discrimination by reason of handicap, disability, or illness

Comments made by city commissioners, that former city employee who was double amputee below the knee, did not have appropriate energy level for job, that employee was suffering from "professional fatigue," and that employee was not attending enough meetings away from city hall, were not direct evidence of disability discrimination under ADA; there was no evidence that commissioners who had made comments felt that employee's alleged deficiencies were caused by employee's disability. Americans with Disabilities Act of 1990, § 2 et seq., 42

U.S.C.A. § 12101 et seq.

[3]  Civil Rights🔑Particular conditions, limitations, and impairments

Former city manager who was double amputee below the knee, established that his ability to perform the major life activity of walking was severely limited, and therefore, that he was a disabled person within meaning of ADA; employee was forced to use prosthesis to walk, was unable to walk long distances or stand for a considerable amount of time, could not run, walk on rough terrain, or walk over hilly terrain, and could not perform any activities requiring bending of the ankles. Americans with Disabilities Act of 1990, § 3(2)(A), 42 U.S.C.A. § 12102(2)(A); 🚩29 C.F.R. § 1630.2(i), (j)(1)(ii), (j)(3)(i).

2 Cases that cite this headnote

[4]  Civil Rights🔑Discrimination by reason of handicap, disability, or illness

Former city manager who was double amputee below the knee, was terminated under conditions which gave rise to inference that termination was based on his disability, as required for prima facie case under ADA; city commissioners had voted to retain employee just weeks prior to their decision to terminate him, and commissioners had made comments that employee did not have appropriate energy level for job, that he was suffering from "professional fatigue," and that he was not attending enough meetings away from city hall. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[5]  Civil Rights🔑Public employment
Civil Rights🔑Particular cases

Former city manager's inadequate job performance was legitimate, non-disability and non-age based reason for his termination; although manager was double amputee below the knee, he occasionally drank alcohol on the job, failed to provide information to or communicate with city commissioners, gave press statements without commission approval, and had questionable loyalty to commission. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[6]  Civil Rights🔑Discrimination by reason of handicap, disability, or illness

Belief of one city commissioner and opinion of newspaper reporter, that other city commissioners were motivated by discriminatory reasons when they voted to terminate employee who was double amputee below the knee, was not sufficient evidence to show that city's proffered reason for terminating employee was pretext for disability

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

discrimination. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[7]  **Civil Rights** ⚷ Practices prohibited or required in general;  elements

In order to establish a prima facie case of retaliation under the ADA, the employee must show: (1) that he was engaged in protected activity; (2) an adverse action by employer either after or contemporaneous with the employee's protected action; and (3) causal connection between the employee's action and the employer's adverse action. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 29 C.F.R. § 1630.12(a).

1 Case that cites this headnote

[8]  **Civil Rights** ⚷ Motive or intent;  pretext
     **Municipal, County, and Local Government** ⚷ Other particular offices or positions
     **Public Employment** ⚷ Motive and intent;  pretext

City's proffered reason for terminating city manager, that manager had failed to inform city commissioners regarding what needed to be done to comply with ADA, was not pretext for retaliation under ADA; failure to keep decision-making board of the city informed of what was necessary to be in compliance with ADA was not protected activity. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; 29 C.F.R. § 1630.12(a).

[9]  **Civil Rights** ⚷ Age discrimination

Plaintiff in an ADEA case can show discrimination by direct evidence or by the indirect method established in McDonnell Douglas. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

2 Cases that cite this headnote

[10] **Civil Rights** ⚷ Age discrimination

Comments made by city commissioners, that former city manager was suffering from "burn out," that manager was a member of the "old boys' club," and that manager had "old ways," were not direct evidence of age discrimination under ADEA; use of the word "old" did not necessarily indicate a reference to manager's age, and comments might have applied to manager's state of mind rather than his age. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

4 Cases that cite this headnote

[11]  Civil Rights ⚖ Discharge or layoff

To establish a prima facie case of age discrimination pursuant to the ADEA, employee must show that: (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**Attorneys and Law Firms**

*1308 Edward L. Bailey, Carol B. Bonebrake, Cosgrove, Webb & Oman, Topeka, KS, for James R Pearson, plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for City of Manhattan, defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc. 37) and defendant's Motion to Strike Certain Portions of Affidavits (Doc. 46). Both parties have fully briefed the issues and the court is ready to rule.

**I. FACTUAL BACKGROUND**

The plaintiff initiated this action seeking damages under a three count complaint. In Count I, the plaintiff claims the defendant terminated him because of his disabilities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. In Count II, the plaintiff claims the defendant terminated him in retaliation for participating a protected activity under the ADA. In Count III, the plaintiff claims the defendant discriminated against him in employment decisions based upon his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The defendant claims that it had legitimate business reasons for its employment decisions and that no discrimination or retaliation took place.

The City of Manhattan is governed by five city commissioners (hereinafter referred to as the "commission"). The city also has a City Manager who serves at the will of the commission. The plaintiff was initially employed by the defendant in 1978 as assistant city manager. In June 1985, he suffered a vascular problem in his lower extremities which required a double amputation below each knee. The plaintiff was fitted with prosthesis on both legs and was able to return *1309 to work with some modifications to his duties.

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

In 1991 and early 1992, Toby Tyler, a disable resident of Manhattan, began making demands on the City of Manhattan to become ADA compliant. In 1992, the mayor of Manhattan appointed a committee to address the concerns of several citizens concerning the ADA. The plaintiff was designated as the liaison between the ADA committee and the commission. The commission relied, at least in part, on the advice of the plaintiff as to what the city needed to do in order to be in compliance with the ADA. The plaintiff was appointed city manager on July 28, 1992.

In February 1993, Toby Tyler filed suit in this court against the defendant for violations of the ADA. A mandatory injunction was issued directing the defendant to comply with the ADA. The plaintiff claims that some of the city commissioners held the plaintiff personally responsible for the outcome of the Toby Tyler case.

On April 4, 1995, the commission voted 4–0 to retain the plaintiff as the city manager, with the terms and conditions of his employment to be determined at a later date. Commissioner Hall abstained from the vote because the terms and conditions were not yet established. At that same meeting, the commission granted a request of the plaintiff that he be given a two week leave of absence with pay due to stress. On April 18, 1995, the commission voted 3–2 to terminate the plaintiff.

The facts in this opinion are either uncontroverted or are viewed in a light most favorable to the plaintiff, the non-moving party. Additional facts will be discussed below, when needed.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., U.S. v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable ***1310** to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is

sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Count I—Discrimination under the ADA

[1] The ADA prohibits employers from discriminating against qualified individuals with disabilities in regard to hiring, advancement, discharge, or other terms, conditions, or privileges of employment based upon their disabilities. *See* 42 U.S.C. § 12112(a). To prevail on a claim of discriminatory discharge under the ADA, a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, meaning that with or without reasonable accommodation, he is still able to perform the essential functions of his job; and (3) that he was terminated because of his disability. *Smith v. Midland Brake, Inc.,* 138 F.3d 1304, 1307–08 (10th Cir.1998).

[2] A plaintiff can show discrimination either by direct or indirect evidence. The plaintiff has pointed out certain comments which he considers direct evidence of discrimination. These include one commissioner's belief that the plaintiff's energy level was a problem. Feeling that the plaintiff did not have the appropriate energy level for the job is not direct evidence of discrimination based on the plaintiff's disability. Numerous factors could be present which lead to a lack of energy. The disability is only one of those factors. The plaintiff has not shown that, in making the statement, the commission referred in any way to the plaintiff's disability. Another comment dealt with the plaintiff suffering from "professional fatigue." The plaintiff claims that this was directly caused by his disability. "Professional fatigue" is clearly different from physical fatigue. There is no evidence that the commissioner who made this comment felt that the "professional fatigue" was caused by the plaintiff's disability. The plaintiff's belief that his disability caused this condition does not transform this statement into direct evidence of discrimination. The final piece of evidence forwarded by the plaintiff involves a concern by one of the commissioners that the plaintiff was not attending enough meetings away from City Hall. In support of this claim, the plaintiff cites his own deposition taken January 6, 1998. However, taking the plaintiff's comment in his deposition in context, the court finds that this is no direct evidence of discrimination. On page 26 of the deposition transcript, the plaintiff made the following statement:

> As I recall, the objection was that I was not giving sufficient attention to the meetings being attended by the city commission in favor of other activities, other meetings.

This statement shows that the commissioner was not objecting to the plaintiff's lack of attendance based upon his disability. Instead, it shows that the commissioner felt that the plaintiff was not attending enough meetings attended by the commission because he was giving too much of his attention to other activities. This is clearly not direct evidence of discrimination based upon the plaintiff's disability.

The court finds that there is no credible direct evidence that the decision to terminate the plaintiff was based on a discriminatory motive concerning his disability. However, this does not end the inquiry. The Tenth Circuit has adopted the burden-shifting format set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as a framework for analyzing civil rights claims when no direct evidence of discrimination exists. *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992). The Tenth Circuit has held that the *McDonnell Douglas* analysis should be applied to cases brought under the ADA. *Rice v. Wal–Mart Stores, Inc.,* 12 F.Supp.2d 1207, 1211

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

(D.Kan.1998) (citing *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997)).

To survive summary judgment, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once the plaintiff **\*1311** has established a *prima facie* case, a rebuttable presumption of discriminatory intent arises and the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Flasher,* 986 F.2d at 1316 (citations omitted). However, the employer's reason for the adverse action "must be reasonably specific and clear." *Id.*

If the defendant employer meets this burden, the presumption of discrimination arising from the *prima facie* case "simply drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). " 'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1996)). The plaintiff may establish pretext by showing " 'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The court must determine whether the evidence, interpreted in the light most favorable to the plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Jones v. Unisys Corp.,* 54 F.3d 624, 632 (10th Cir.1995) (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 798 (10th Cir.1993)). "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Id.* "The plaintiff at all times bears the 'ultimate burden of persuasion.' " *See St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. 2742 (citations omitted).

The *prima facie* case that the plaintiff must show under the *McDonnell Douglas* analysis is (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, he is able to perform the essential functions of the job, with or without reasonable accommodations; and (3) that the employer terminated his employment under circumstances which give rise to an inference that the termination was based on his disability. *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

The defendant claims that the plaintiff cannot meet the first and third elements of an ADA claim listed above. First, the defendant claims that the plaintiff is not disabled within the meaning of the ADA. A person is considered to be disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more of [his] major life activities." *Id.* at 1323 (citing 42 U.S.C. § 12102(2)(A)).

It is undisputed that the plaintiff has a physical impairment. As stated above, he is a double amputee below the knees. the defendant contends that the plaintiff's impairment does not substantially limit one or more of his major life activities. In support of this contention, the defendant cites numerous cases dealing with one of the major life activities—working. These cases are based on 29 C.F.R. § 1630.2(j)(3)(i), which states, in pertinent part:

> (3) With respect to the major life activity of *working* —
>
> (i) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

The defendant discusses in considerable length how the plaintiff is able to perform the class of jobs for which he is qualified by education and experience. The defendant contends that this shows that the plaintiff's impairment does not limit a major life activity.

The defendant's reliance on this portion of the regulations is misplaced. All of the cases and regulations cited by the

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

defendant relate to the inability to perform the activity of *1312 "working." As defined by the regulations, major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1998). The term "substantially limits" includes:

> Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(ii) (1998). Therefore, the plaintiff should be considered disabled under the ADA if he is "significantly restricted as to the condition, manner or duration" of the major life activity of "walking."

[3] The plaintiff has represented to the court that his ability to walk is severely limited. He is forced to use prosthesis to walk. He is unable to walk long distances or stand for a considerable amount of time. He cannot run at all. He cannot walk on rough terrain, nor can he walk over hilly terrain. He cannot perform any activity which requires the bending of the ankles. The defendant has not produced any evidence to refute these claims by the plaintiff.

Based on the limitations of the plaintiff's ability to perform the major life activity of "walking," the court finds that, for the purposes of this motion for summary judgment, he meets the requirements of the ADA to be considered a disabled person. Therefore, the first element of the *prima facie* case is met.

The second element the plaintiff must show is that he was a "qualified individual" with a disability. In order to meet this requirement, the plaintiff must show that, with or without reasonable accommodations, the plaintiff is still able to perform the essential functions of his position. See *Smith,* 138 F.3d at 1308. The defendant does not contest the fact that the plaintiff has the ability to perform the essential tasks of the city manager. Therefore, the second element of the plaintiff's case has been shown for the purpose of this motion.

[4] The third element the plaintiff must show is that he was terminated under conditions which give rise to inference that the termination was based on his disability. The court finds that the plaintiff has made a sufficient showing of this element to proceed with the burden-shifting analysis. It is uncontroverted that the commission voted to retain the plaintiff just weeks prior to the decision to terminate him. Additionally, the plaintiff has pointed out certain conduct and statements made by the commissioners which, although not amounting to direct evidence of discrimination, may give rise to inference that the termination was based on his disability.

The court finds that the plaintiff has produced sufficient evidence to raise a material question of fact on each of the elements required under the *McDonnell Douglas* burden-shifting analysis, as it applies to ADA discrimination claims. Therefore, the burden is shifted to the defendant to illustrate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff.

[5] The defendant discusses at considerable length the reasons each of the three commissioners had for voting to terminate the plaintiff. The list of reasons forwarded by the defendant is long and convoluted. However, some of the reasons offered by the defendant include:

> (1) that the plaintiff appeared at public meetings with alcohol on his breath and admitted to drinking on the job occasionally;
>
> (2) that the plaintiff failed to provide information requested by commissioners unless at least three of them joined in the request;
>
> (3) that the plaintiff gave statements to the press without seeking commission approval;

(4) that inadequate communication between the plaintiff and the commission existed; and

(5) questioning whether the plaintiff's loyalty was with the commission, Kansas State University, or the Manhattan City of Commerce.

Although other reasons are presented by the defendant, these examples show the general attitudes concerning the plaintiff's job performance among the three commissioners who voted to terminate him. The court finds that **\*1313** these are all legitimate, nondiscriminatory reasons for the termination for the purposes of the *McDonnell Douglas* burden-shifting analysis. Therefore, the burden shifts back to the plaintiff to present evidence showing that the reasons offered by the defendant are merely pretext.

On summary judgment, once the defendant produces a facially nondiscriminatory reason for terminating the plaintiff, the plaintiff's burden is to only demonstrate a genuine dispute of material fact as to whether the proffered reasons were pretextual—or unworthy of belief. *Morgan,* 108 F.3d at 1321. To avoid summary judgment, the plaintiff need not demonstrate that discriminatory reasons actually motivated the defendant's decision. *Id.* at 1321–22.

The only evidence presented by the plaintiff in support of his claim that the reasons forwarded by the commissioners for his termination is his own deposition testimony, the affidavit of another commissioner who voted to retain him in the position of City Manager, and a newspaper article from the *Manhattan Mercury.* The court finds that this evidence is insufficient to meet the burden of showing pretext.

[6] The affidavit of Mr. Maughmer, one of the commissioners who voted to retain the defendant, is based solely on what he felt the other commissioners were thinking. He does not point to any statements or conduct of the three commissioners who voted to terminate the plaintiff which, to the court's satisfaction, show other motives. The comments about being concerned with terminating the plaintiff because of possible legal issues surrounding his disability are evidence of an awareness of the disability, but not evidence that this was the reason for the decision. His beliefs about what the other commissioners were thinking, and what their real reasons for terminating the plaintiff were, are not persuasive in this case. Evidence of what one person believes that another person is thinking would clearly not be admissible at trial as it is mere speculation, and, similarly, it will not be considered as evidence of pretext in regard to this motion for summary judgment.

The newspaper article from the *Manhattan Mercury* has even less evidentiary value than the affidavit submitted by Mr. Maughmer. The court fails to see how a newspaper reporter's opinion about the real reason the plaintiff was fired supports the plaintiff's case at all. There is no evidence that the reporter had all of the information concerning the termination. This article would, in all likelihood, not be admissible at trial due to its lack of relevance, and is not accepted as support for the plaintiff's case in regard to this motion for summary judgment.

Under the *McDonnell Douglas* burden-shifting analysis, the plaintiff must produce sufficient evidence to show that the defendant's offered reason for his termination was pretext. Because the plaintiff has failed to meet this burden, summary judgment is granted to the defendant on the claim in Count I of the complaint.

### B. Count II—Retaliation under the ADA

In Count II of the complaint, the plaintiff alleges he was retaliated against for testifying, assisting and participating in a case brought by Toby Tyler against the defendant for violations of the ADA. The plaintiff claims that some of the commissioners blamed him for both the case being brought and the result of the case. He claims that he was terminated as a result of his activities performed in conjunction with the Toby Tyler case.

[7] In addition to prohibiting discrimination based on disabilities, the ADA also prohibits retaliation for engaging in ADA related conduct. Under the ADA,

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

> It is unlawful to discriminate against any individual because that individual has opposed any act or practice made unlawful by this part or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing to enforce any provision contained in this part.

29 C.F.R. § 1630.12(a). The retaliation provision was clearly enacted to prevent employers from terminating employees who become advocates for the ADA. No person should be retaliated against for supporting any cause related to the ADA. In order to establish a **\*1314** *prima facie* case of retaliation under the ADA, the plaintiff must show (1) that he was engaged in protected activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action. Morgan v. Hilti, Inc., 108 F.3d 1319, 1324.

The defendant claims that the plaintiff was not engaged in a protected activity, and, therefore, cannot establish a *prima facie* case of retaliation. It is undisputed that the plaintiff did engage in protected activity. He was very involved in the case involving Toby Tyler and testified at trial. This conduct does fall within the category of protected activity. Therefore, the plaintiff does meet the requirements for the first element of an ADA retaliation case.

The second element of a *prima facie* case of retaliation is that the plaintiff suffered an adverse employment action either contemporaneous with, or following, his engagement in the protected activity. The court finds that this element is clearly met as the plaintiff was terminated from his employment following his involvement in the Toby Tyler case.

The final element the plaintiff must be able to show is a connection between the protected activity and the adverse employment action. The plaintiff claims that many of the commissioners blamed him for the outcome of the Toby Tyler case. In fact, he claims to have been told that some of the commissioners blamed him for the case being filed in the first place.

[8] The defendant claims that the reasons for its decision to terminate the plaintiff were not based on the protected activity involving the Toby Tyler case. One of the commissioners admits being critical of the plaintiff for his role in the Toby Tyler case. However, it is clear that this criticism dealt with the fact that the commission relied upon the plaintiff to inform them what the city needed to do to be in compliance with the ADA. The commissioner felt that the plaintiff had in fact been part of the reason for the Toby Tyler case and for the result. However, this feeling was based on the plaintiff's failure to instruct the city on what needed to be done to be compliant with the ADA, not because of any of the protected activity engaged in by the plaintiff.

The plaintiff claims that the reasons offered by the commissioners for blaming the plaintiff for the Toby Tyler case are merely pretext. He states that the defendant had a city attorney, an ADA coordinator and special counsel to help with the ADA requirements. However, he does not point to any evidence that the commissioners did not, in fact, rely on him for the information. The only evidence before the court is that, whether wise to do so or not, the commission did rely on the plaintiff for information on ADA compliance. It is not for this court to decide whether the defendant's decision was wise. When the only evidence before the court is that the plaintiff's stated reason for its actions is valid, the court has no choice but to accept that reason.

The court finds that the plaintiff has produced no evidence that the decision to terminate him was related to any protected activity under the ADA. The fact that the commissioners may have blamed him for the Toby Tyler case is not actionable unless that decision was based upon some form of protected activity under the ADA. Failure to keep the decision-making board of the defendant informed of what is necessary to be in compliance with the ADA is not protected activity. The evidence before the court shows that the plaintiff was terminated in retaliation for not performing his job duties, not for participating in protected activity under the ADA. Therefore, summary judgment is granted in favor of the defendant on the claim contained in Count II of the compliant.

### C. Count III—Discrimination under the ADEA

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

The third claim contained in the plaintiff's complaint is that he was discriminated against by the defendant based upon his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. In order to succeed on this claim, the plaintiff must show that his age was a motivating factor in the decision to terminate him from his position as city manager.

[9] The plaintiff in an ADEA case can show discrimination by direct evidence or by **\*1315** the indirect method established by *McDonnell Douglas*. *Bedell v. American Yearbook Company, Inc.,* 17 F.Supp.2d 1227, 1231 (D.Kan.1998). The plaintiff claims that there is both direct and indirect evidence of age discrimination. He claims that one of the commissioners indicated that "burn out" was one reason for the termination. According to the plaintiff, some of the commissioners also made comments referring to the plaintiff being a member of the "old boys' club" and that the plaintiff had "old ways."

[10] The plaintiff contends that these comments provide direct evidence that age was a deciding factor in the termination. The court disagrees. The reference to the plaintiff suffering from "burn out" is certainly not direct evidence of age discrimination. Anyone in the working public, regardless of age, is capable of suffering from burnout. In addition, not every reference to the word "old" indicates that the person speaking is talking about a person's age. Terms such as "old boys' club" and "old ways" apply more to a person's state of mind than to a person's age. Just as a twenty year old man can be considered "old fashioned," so can anyone, of any age, be considered to be part of an "old boy's club" or have "old ways." These comments are clearly not direct evidence that the plaintiff's age was a determining factor in his dismissal.

[11] Having determined that the plaintiff has produced no direct evidence of age discrimination, the court must now turn to the *McDonnell Douglas* burden-shifting analysis to determine if summary judgment is proper on this claim. The Tenth Circuit has applied this framework to claims brought under the ADEA. See *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526 (10th Cir.1994) (applying the *McDonnell Douglas* framework to ADEA claim). To establish a *prima facie* case of age discrimination pursuant to the ADEA, the plaintiff must show that (1) he is "within the protected age group"; (2) he "was doing satisfactory work"; (3) he "was discharged"; and (4) his position was filled by a younger person. *Cone,* 14 F.3d at 529 (citing *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1420 (10th Cir.1991)).

It is undisputed that the first, third and fourth elements of the *prima facie* case have been established by the plaintiff. He was fifty-four years old at the time of his termination, he was terminated, and his position was filled by someone who was approximately thirty-five years old. The court will assume, without deciding, that the plaintiff has met the second element of the case as well—that he was performing satisfactorily. This shifts the burden to the defendant to come forward with a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff. The defendant's proffered reason for its decision to terminate the plaintiff has been outlined earlier in this opinion during the discussion of discrimination under the ADA.

Because the defendant has advanced a nondiscriminatory reason for its decision to terminate the plaintiff, the plaintiff now bears the burden of showing that the reasons forwarded by the defendant are pretext. The court finds that the analysis and findings made in connection with the ADA discrimination claim are applicable here. The plaintiff has not been able to show pretext, and, therefore, summary judgment is proper on this claim.

**IV. CONCLUSION**

The court finds that summary judgment is proper on each of the plaintiff's claims. The plaintiff has been unable to show pretext under the *McDonnell Douglas* test for his ADA discrimination and ADEA discrimination claims. The plaintiff has also failed to show any connection between his termination and any protected activity under the ADA on his retaliation claim.

Because the court has found that summary judgment is proper on each of the plaintiff's claims, the Motion to Strike Certain Portions of Affidavits is now moot.

**IT IS THEREFORE BY THIS COURT ORDERED** that the defendant's Motion for Summary Judgment (Doc. 37) is

**Pearson v. City of Manhattan, 33 F.Supp.2d 1306 (1999)**
14 NDLR P 205

granted on all of the plaintiff's claims.

**IT IS FURTHER ORDERED** that defendant's Motion to Strike Certain Portions of Affidavits (Doc. 46) is denied as moot.

**All Citations**

33 F.Supp.2d 1306, 14 NDLR P 205

---

**End of Document**     © 2025 Thomson Reuters. No claim to original U.S. Government Works.